**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JEANNATE JARDINE, DONALD and RUTH FUGATE, and LINDEL and RONNIE PERKINS, on Behalf of Themselves and All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>LUMBER LIQUIDATORS, INC., LUMBER LIQUIDATORS LEASING, LLC, LUMBER LIQUIDATORS HOLDINGS, INC., and LUMBER LIQUIDATORS SERVICES, LLC,<br><br>        Defendants. | CASE NO. _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs, Jeannate Jardine, Donald and Ruth Fugate, and Lindel and Ronnie Perkins, by and through undersigned counsel, on behalf of themselves and all persons similarly situated, complain and allege as follows upon knowledge relating to themselves and upon information and belief as to all other matters:

## NATURE OF THE CASE

1.      This civil action seeks monetary damages, restitution, injunctive relief, and declaratory relief from Defendants Lumber Liquidators Inc., Lumber Liquidators Leasing, LLC, Lumber Liquidators Holding, Inc., and Lumber Liquidators Services, LLC (collectively, "Defendants" or "Lumber Liquidators"), arising from Lumber Liquidators' fraudulent, deceptive, and misleading sale of Chinese wood flooring products ("Wood Flooring").

2.      Lumber Liquidators sells various Wood Flooring products in the United States.  It falsely advertises and represents that its Wood Flooring is of the "safest and highest quality."[1]  In reality, Lumber Liquidators secretly imports and passes off Wood Flooring from China that emits excessive levels of formaldehyde, a known carcinogen.

3.      Lumber Liquidators falsely advertises and represents that its Wood Flooring complies with strict formaldehyde standards on its product labels, website, and elsewhere.  Yet, the toxic formaldehyde emissions form Lumber Liquidators' Wood Flooring is multiple times the maximum permissible limits set by those standards at the time of purchase.

4.      Lumber Liquidators' illegal behavior with respect to its manufacturing, marketing, and sale of Wood Flooring has directly and proximately caused Plaintiffs and other Class members financial harm.  Because of Lumber Liquidators' wrongful conduct, the value of the Wood Flooring purchased by Plaintiffs and other Class members is significantly less than warranted.  Plaintiffs would have paid substantially less, if anything, for Wood Flooring had they known the products contained elevated levels of the toxin formaldehyde.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than Lumber Liquidators.

---

[1] *See, e.g.*, http://www.lumberliquidators.com/ll/s/laminate-and-vinyl-flooring?googlePageType=product (last accessed Mar. 9, 2015).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Lumber Liquidators is subject to personal jurisdiction here and regularly conducts business in this district, one of the Plaintiffs resides in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## PARTIES

7.      Plaintiff Jeannate Jardine is a citizen and resident of Philadelphia, Pennsylvania.

8.      Plaintiffs Donald and Ruth Fugate ("the Fugates") are citizens and residents of Kenosha, Wisconsin.

9.      Plaintiffs Lindel and Ronnie Perkins ("the Perkins") are citizens and residents of Rossville, Georgia.

10.      Defendant Lumber Liquidators, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 21368.  Lumber Liquidators, Inc. is licensed and doing business in the Commonwealth of Pennsylvania and the state of Wisconsin.

11.      Defendant Lumber Liquidators Leasing, LLC is a Delaware Limited Liability Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 21368.

12.      Defendant Lumber Liquidators Holdings, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23618.

13.      Defendant Lumber Liquidators Services, LLC, is a Delaware limited liability corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 21368.

## COMMON FACTUAL ALLEGATIONS

### A.    Lumber Liquidators

14.    Lumber Liquidators have manufactured, labeled and sold, during the Class Period, the toxic Wood Flooring as being compliant with "CARB regulations in the State of California."  CARB is an acronym for the California Air Resources Board, an entity which has promulgated safety standards for the emission of formaldehyde for products sold in California. The California standards spurred, at least in part, the federal Formaldehyde Standards for Composite Wood Products Act, 15 U.S.C. § 2697, and regulations promulgated thereunder.

15.    Lumber Liquidators' Wood Flooring is not what it purports to be.  The Wood Flooring contains a dangerous level of formaldehyde gas which exceeds the "CARB regulations in the State of California" and the standards promulgated in the Toxic Substances Contract Act, 15 U.S.C. § 2601 *et. seq.* (*see* Title VI – Formaldehyde Standards of Composite Wood Products, 15 U.S.C. § 2697) and is hazardous to human health.

16.    Formaldehyde gas can cause cancer, asthma, chronic respiratory irritation and other ailments including skin and breathing problems.  The risk of these health problems is significantly greater for children.

17.    Formaldehyde is the sort of toxic substance to which people may be exposed without knowing they are at risk.  Day after day, week after week, month after month, Plaintiffs lives in her home, enclosed places, where their flooring is emitting toxic cancer causing fumes.

18.    As such, the Wood Flooring Lumber Liquidators sold Plaintiffs and other customers poses great health risks.

19.    Lumber Liquidators' marketing materials for the Wood Flooring contain false and misleading information relating to compliance with California standards and designed to increase sales of the product at issue.

20.     Lumber Liquidators deceptively manufactured, labeled, and sold the Wood Flooring.  The Wood Flooring, having no monetary value, is worthless.

21.     Plaintiffs and the Class have been damaged by Lumber Liquidators' dangerous and deceptive Wood Flooring.  Plaintiffs and the Class are entitled to a return of the full purchase price paid for the Wood Flooring and other damages to be proven at trial.

22.     Upon information and belief, Lumber Liquidators has sold, directly or indirectly (through dealers and other retail outlets), tens of thousands of square feet of Wood Flooring in Pennsylvania, Wisconsin and the other Class states.

23.     Lumber Liquidators sells its Wood Flooring through third-party sellers or through its directly-owned showrooms.

24.     At the time of sale, Lumber Liquidators warranted that its Wood Flooring was fit for the ordinary purpose for which such goods were used and were free from defects in materials and workmanship.

25.     Lumber Liquidators represented and warranted that its Wood Flooring conformed to the applicable Pennsylvania and Wisconsin building codes and applicable CARB standards.

26.     These representations, described herein, became part of the basis of the bargain when Plaintiffs and Class members, and/or their builders/contractors purchased the Wood Flooring, and/or assumed the warranty.

27.     In addition, these representations became part of the basis of the bargain when Plaintiffs and/or Class members purchased the product with Lumber Liquidators' express representations concerning the quality of the Wood Flooring.

28.     Plaintiffs and Class members relied on Lumber Liquidators' warranty, published specifications and/or advertisements regarding the quality of the Wood Flooring.

29.     However, the Wood Flooring does not conform to these express representations and warranties, and, as alleged herein, Lumber Liquidators breached its express warranties and representations concerning this flooring.

30.     The Wood Flooring suffers from various design deficiencies which further discovery will establish in detail, including, excessive formaldehyde levels.

31.     Because the Wood Flooring emits excessive formaldehyde levels, they violate Pennsylvania and Wisconsin building codes and industry standards, including the applicable Building Codes and CARB standards as well as Lumber Liquidators' express or implied representations and warranties.

32.     The defects and deficiencies are due to fundamental design, engineering, and manufacturing errors well within Lumber Liquidators' area of expertise.

33.     In addition to the express representations and warranties regarding the quality of the flooring discussed herein, Lumber Liquidators also ships a Limited Warranty with its Wood Flooring.

34.     However, Lumber Liquidators' shipping of the Wood Flooring with prior knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of its express warranty, makes the limitations of the Limited Warranty unconscionable in all respects, and therefore is void *ab initio*.

35.     The Limited Warranty is not a negotiated contract and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

36.     Moreover, during contact with the Class members, Lumber Liquidators concealed its knowledge of repeated product defects in the Wood Flooring in the Class members' structures.

37.     As Lumber Liquidators has known of the Wood Flooring defects and has failed to timely honor its express and implied warranties, the Limited Warranty has failed of its essential purpose, and the limitations therein are null and void.  Further, the limitations contained in the Limited Warranty are not conspicuous.

38.     Despite knowing of the defects in the Wood Flooring, Lumber Liquidators has not notified all purchasers, builders/contractors, and/or homeowners with the Wood Flooring of the defect nor provided uniform relief.

39.     Plaintiffs and Class Members have not received the value for which they or their builder bargained when the Wood Flooring was purchased. There is a difference in value between the Wood Flooring as warranted and the Wood Flooring containing the defect.

**B.     Plaintiffs' Experiences**

40.     Plaintiff Jeannate Jardine paid for and had installed Wood Flooring from Lumber Liquidators in or around 2012.

41.     Plaintiffs the Fugates paid for and had installed Wood Flooring from Lumber Liquidators in or around 2013.

42.     Plaintiffs the Perkins paid for and had installed Wood Flooring from Lumber Liquidators in or around 2013.

43.     Unknown to Plaintiffs, the product they purchased was defective in that it had high levels of formaldehyde emissions and other failures as described herein.

44.     The characteristics of the Wood Flooring defect (e.g., the formaldehyde emissions) were present when the Wood Flooring left Lumber Liquidators and were part of the design and manufacture.

45.     Plaintiffs have suffered damage to themselves and their families, including but not limited to depreciation in value, out-of-pocket losses, and replacement costs.

## CLASS ALLEGATIONS

46.     Plaintiffs brings this class action pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the classes defined below:

> **INJUNCTIVE RELIEF CLASS:**
> All persons and entities who purchased Wood Flooring from Lumber Liquidators, either directly or through an agent, that was sourced, processed, treated, or manufactured in China.
>
> **DAMAGES CLASS:**
> All persons and entities purchased Wood Flooring from Lumber Liquidators, either directly or through an agent, that was sourced, processed, treated, or manufactured in China.
>
> **PENNSYLVANIA STATE SUB-CLASS:**
> All persons and entities in Pennsylvania who purchased Wood Flooring from Lumber Liquidators, either directly or through an agent, that was sourced, processed, treated, or manufactured in China.
>
> **WISCONSIN STATE SUB-CLASS:**
> All persons and entities in Wisconsin who purchased Wood Flooring from Lumber Liquidators, either directly or through an agent, that was sourced, processed, treated, or manufactured in China.
>
> **GEORGIA STATE SUB-CLASS:**
> All persons and entities in Georgia who purchased Wood Flooring from Lumber Liquidators, either directly or through an agent, that was sourced, processed, treated, or manufactured in China.

Excluded from the Classes are: (a) any Judge or Magistrate Judge presiding over this action and members of their families; (b) Lumber Liquidators, its affiliates, and its officers and directors; (c) all persons who properly execute and file a timely request for exclusion from the Classes; and (d) the attorneys of record in this case.

47.     *Numerosity:* The Classes are composed of thousands of persons geographically dispersed, the joinder of whom in one action is impractical.  Moreover, upon information and belief, the Classes are ascertainable and identifiable from Lumber Liquidator records or documents.

48.     *Commonality*: Questions of law and fact common to the Classes exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.   These common legal and factual issues include, but are not limited to the following:

a.     Whether Lumber Liquidators' Wood Flooring products emit excessive levels of formaldehyde;

b.     Whether Lumber Liquidators represented and warranted that its Wood Flooring products complied with their label descriptions;

c.     Whether Lumber Liquidators omitted and concealed material facts from its communications and disclosures to Plaintiffs and the other Class members regarding the illegal sourcing of its Wood Flooring products;

d.     Whether Lumber Liquidators breached its express or implied warranties to Plaintiffs and the other Class members with respect to its Wood Flooring products;

e.     Whether Lumber Liquidators knew or should have known that its Wood Flooring did not conform to the label description;

f.     Whether, as a result of Lumber Liquidators' conduct, Plaintiffs and the other Class members have suffered damages; and if so, the appropriate measure of damages to which they are entitled;

g.     Whether, as a result of Lumber Liquidators' conduct, Lumber Liquidators was unjustly enriched; and

h.     Whether, as a result of Lumber Liquidators' misconduct, Plaintiffs and the other Class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

49. *Typicality:* Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs and each of the other Class members have been injured by the same wrongful practices of Lumber Liquidators. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the other Class members' claims and are based on the same legal theories.

50. *Adequate Representation:* Plaintiffs will fully and adequately assert and protect the interests of the other Class members. In addition, Plaintiffs has retained class counsel who are experienced and qualified in prosecuting class action cases similar to this one. Neither Plaintiffs nor their attorneys have any interests contrary to or conflicting with other Class members' interests.

51. *Predominance and Superiority:* This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and Courts throughout Pennsylvania and Wisconsin (and elsewhere) would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

## COUNT I
### (Negligence)

52.     Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

53.     Lumber Liquidators had a duty to Plaintiffs and to members of the Class to manufacture and sell flooring that was free of excessive formaldehyde levels that would cause damage to Plaintiffs' persons and property.

54.     Lumber Liquidators had a duty to Plaintiffs and to members of the Class to test the Wood Flooring to ensure safe levels of formaldehyde for a reasonable period of use.

55.     Lumber Liquidators had a duty to Plaintiffs and to Class members to ensure that the Wood Flooring was suitable, either by testing or by verifying third-party test results.

56.     Lumber Liquidators had a duty to Plaintiffs and to members of the Class to ensure that the Wood Flooring complied with industry standards and all applicable building codes.

57.     Lumber Liquidators failed to exercise ordinary and reasonable care in the purchase and sale of the Wood Flooring and in determining whether the Wood Flooring that it sold, and continued to sell, contained a latent defect that would result in dangerous and potentially life threatening levels of formaldehyde emissions.

58.     Lumber Liquidators failed to exercise ordinary and reasonable care in the purchase and sale of the Wood Flooring and breached the foregoing duties.

59.     Lumber Liquidators breached its duty to the Plaintiffs and Class members to test the Wood Flooring to ensure safe levels of formaldehyde emissions for a reasonable period of use.

60.     Lumber Liquidators breached its duty to Plaintiffs and to Class members to ensure that the Wood Flooring was suitable, either by testing or by verifying third-party test results.

61.     Lumber Liquidators breached its duty to Plaintiffs and to members of the Class to ensure that the Wood Flooring complied with industry standards and the applicable building codes.

62.     Lumber Liquidators breached its duty to Plaintiffs and to members of the Class to forewarn purchasers, installers, and users regarding the known risk of formaldehyde emissions.

63.     The negligence of Lumber Liquidators, its agents, servants, and/or employees, include the foregoing, as well as the following acts and/or omissions:

a.      processing, distributing, delivering, supplying, inspecting, marketing and/or selling Wood Flooring without adequately and thoroughly testing them to all applicable standards and building codes;

b.      processing, distributing, delivering, supplying, inspecting, marketing and/or selling Wood Flooring without adequately testing long term performance;

c.      negligently failing to ensure that the Wood Flooring conformed to all applicable standards and building codes; and

d.      concealing information concerning the dangerous level of formaldehyde emissions in the Wood Flooring from Plaintiffs and the Class members, while knowing that Lumber Liquidators' Wood Flooring was defective and non-conforming with accepted industry standards and building codes.

64.     Plaintiffs and the Class members have been damaged because the Wood Flooring does not perform its ordinary purpose and emits high levels of formaldehyde gas.

65.     Plaintiffs and the Class members have also been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Lumber Liquidators as aforesaid.

66.     As Lumber Liquidators' conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent or the like, Plaintiffs and the Class members are entitled to an award of punitive damages against Lumber Liquidators.

<u>**COUNT II**</u>
**(Breach of Express Warranty)**

67.     Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

68.     Lumber Liquidators warranted that its flooring was free of defects when it sold those products to Plaintiffs and the members of the Class as described in this Complaint. Defendants further represented that its flooring products complied with CARB formaldehyde standards and all applicable laws and regulations.   Plaintiffs and members of the Class reasonably relied upon these representations.

69.     Lumber Liquidators' warranties became part of the basis of the bargain.

70.     Lumber Liquidators breached their warranties by, inter alia:

a.     Manufacturing, selling and/or distributing flooring that exceeds the CARB formaldehyde standards;

b.     Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

c.     Refusing to honor the express warranty by refusing to properly repair or replace the defective flooring.

71.     Lumber Liquidators was on notice of it breach regarding the excessively high levels of formaldehyde in its flooring from the complaints and requests for refund it received from Class members, internet message boards, and from published product reviews.

72.     As a direct and proximate result of Lumber Liquidators' misconduct, Plaintiffs and the other Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale.  Additionally, Plaintiffs and the other Class members

have either incurred or will incur economic damages at the point of repair in the form of the cost of repair and/or the cost of purchasing non-defective flooring to replace the Lumber Liquidators' flooring.

73.     Plaintiffs and the other Class members are entitled to legal and equitable relief against Lumber Liquidators, including damages, consequential damages, specific performance, rescission, restitution, attorneys' fees, costs of suit, and other relief as appropriate.

**COUNT III**
**(Breach of Implied Warranties)**

74.     Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

75.     At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the purposes for which such products are used and that the product be acceptable in trade for the product description.

76.     Defendants breached this duty by selling flooring to Plaintiffs and the other members of the Class that was not merchantable or fit for the intended purpose.

77.     Defendants were notified that its product was not merchantable within a reasonable time after the defect manifested itself to Plaintiffs and the members of the Class.

78.     As a result of the non-merchantability of Lumber Liquidators' flooring described herein, Plaintiffs and other members of the Class sustained a loss or damages.

**COUNT IV**
**(Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law)**
**(On Behalf of Plaintiff Jardine and the Pennsylvania State Sub-Class)**

79.     Plaintiff Jardine, on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

80. This claim is asserted on behalf of the members of the Pennsylvania State Sub-Class under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.*

81. The UTPCPL, 73 P.S. § 201-3 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

82. The conduct described above and throughout this Complaint took place within the Commonwealth of Pennsylvania and constitutes unfair methods of competition, and unfair or deceptive trade practices, in violation of the UTPCPL.

83. The UTPCPL applies to the claims of Plaintiff Jardine and members of the Pennsylvania Sub-Class because the conduct which constitutes violations of the UTPCPL occurred within or were centered upon the Commonwealth of Pennsylvania.

84. Lumber Liquidators engaged in the concealment, suppression, or omission in violation of the UTPCPL when, in selling and advertising the Wood Flooring, Lumber Liquidators knew that there were defects in the Wood Flooring which would result in dangerous levels of formaldehyde gas emissions.

85. Lumber Liquidators engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiffs, Plaintiffs' builders/contractors, Class members, Class members' builders/contractors, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase Lumber Liquidators' Wood Flooring containing said defect.

86. Plaintiffs, Plaintiffs' builders/contractors, Class members, and/or Class members' builders/contractors would not have purchased the Wood Flooring had they known or become informed of the material defects in the Wood Flooring.

87.     Lumber Liquidators' concealment, suppression, or omission of material facts as alleged herein constitute unfair, deceptive and fraudulent business practices within the meaning of the UTPCPL.

88.     Lumber Liquidators has acted unfairly and deceptively by misrepresenting the quality of the Wood Flooring.

89.     Lumber Liquidators either knew, or should have known, that the Wood Flooring was defectively designed and/or manufactured and would emit unsafe levels of formaldehyde, which would result in severe damages to the Plaintiff's person and property.

90.     Upon information and belief, Lumber Liquidators knew that, at the time Wood Flooring left Lumber Liquidators' control, the Wood Flooring contain the defect described herein resulting in dangerous levels of formaldehyde emissions.  At the time of sale, the Wood Flooring contained the defects.  The defects permit unsafe levels of formaldehyde gas emission and rendered the flooring unable to perform the ordinary purposes for which it was used as well as cause the resulting damage described herein.

91.     As a direct and proximate cause of the violation of the UTPCPL, described above, Plaintiff Jardine and members of the Pennsylvania Sub-Class have been injured in that they have purchased homes or other structures, or outfitted homes or other structures, with the unsafe and dangerous Wood Flooring based on nondisclosure of material facts alleged above.

92.     Had Plaintiff Jardine and members of the Pennsylvania Sub-Class known the defective nature of the Wood Flooring used on their structures, they would not have purchased their structures, would not have outfitted their structures, or would have paid a lower price for their structures.

93.     Lumber Liquidators used unfair methods of competition and unfair or deceptive acts or practices in conducting their businesses.  This conduct constitutes fraud within meaning of the UTPCPL.  This unlawful conduct is continuing, with no indication that Lumber Liquidators will cease.

94.     Lumber Liquidators has engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce by:

    a.      "Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services," *see* 73 P.S. § 201-2(4)(ii);

    b.      "Using deceptive representations . . . in connection with goods or services," *see* 73 P.S. § 201-2(4)(iv);

    c.      "Representing that goods or services have sponsorship [or] approval . . . that they do not have . . . .," *see* 73 P.S. § 201-2(4)(v);

    d.      "Advertising goods or services with intent not to sell them as advertised," *see* 73 P.S. § 201-2(4)(ix);

    e.      "Failing to comply with the terms of any written guarantee . . . ," *see* 73 P.S. § 201-2(4)(xiv); and

    f.      "Engaging in any other fraudulent or deceptive conduct which creates a likelihood or confusion or of misunderstanding," *see* 73 P.S. § 201-2(4)(xxi).

95.     Lumber Liquidators violated the above sections by engaging in the conduct alleged herein.

96.     Plaintiff Jardine and other members of the Pennsylvania Sub-Class, pursuant to 73 P.S. § 201-9.2, *et seq.*, purchased goods from Defendants that were used primarily for personal, family or household purposes.

97.     As a direct and proximate result of Lumber Liquidators' unfair and deceptive acts and practices, Plaintiff Jardine and the other members of the Pennsylvania Sub-Class suffered and will continue to suffer damages, which include, without limitation, costs to inspect, repair or replace their flooring and other property, in an amount to be determined at trial.

98.     As a direct and proximate result of Lumber Liquidators' unfair and deceptive acts and practices, Plaintiff Jardine and members of the Pennsylvania Sub-Class suffered and will continue to suffer damages, which include, without limitation, to their health and well-being in an amount to be determined at trial.

99.     As a result of the acts of consumer fraud described above, Plaintiff Jardine and the Pennsylvania Sub-Class have suffered ascertainable loss in the form of actual damages that include the purchase price of the products for which Lumber Liquidators is liable to the Plaintiff Jardine and the Pennsylvania Sub-Class for treble their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

**COUNT V**
**(Violation of Wisconsin Deceptive Trade Practices Act)**
**(On behalf of Plaintiff the Fugates and Wisconsin State Sub-Class)**

100.    Plaintiffs the Fugates, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

101.    The conduct described above and throughout this Complaint took place within the State of Wisconsin and constitutes unfair business practices in violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*  The Wisconsin Deceptive Trade Practices Act prohibits fraudulent, deceptive, or misleading representations in sales and advertising.  *See* Wis. Stat. 100.18.  Wisconsin law also provides:  "Methods of competition in

business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited." Wis. Stat. § 100.20(1).

102.   The Wisconsin Deceptive Trade Practices Act applies to the claims of Plaintiffs the Fugates and all Wisconsin Sub-Class members because the conduct which constitutes violations of the Wisconsin Deceptive Trade Practices Act by the Defendants occurred within or centered upon the State of Wisconsin.

103.   Lumber Liquidators engaged in the concealment, suppression, or omission in violation of the Wisconsin Deceptive Trade Practices Act when, in selling and advertising the Wood Flooring, Lumber Liquidators knew that there were defects in the Wood Flooring which would result in dangerous levels of formaldehyde gas emissions.

104.   Lumber Liquidators engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiffs the Fugates, Plaintiffs' builders/contractors, Class members, Class members' builders/contractors, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase Lumber Liquidators' Wood Flooring containing said defect.

105.   Plaintiffs the Fugates and Plaintiffs' builder/contractor, Class members, and/or Class members' builders/contractors would not have purchased the Wood Flooring had they known or become informed of the material defects in the Wood Flooring.

106.   Lumber Liquidators' concealment, suppression, or omission of material facts as alleged herein constitute unfair, deceptive and fraudulent business practices within the meaning of the Wisconsin Deceptive Trade Practices Act.

107.   Lumber Liquidators has acted unfairly and deceptively by misrepresenting the quality of the Wood Flooring.

108.    Lumber Liquidators either knew, or should have known, that the Wood Flooring was defectively designed and/or manufactured and would emit unsafe levels of formaldehyde, which would result in severe damages to the Plaintiffs' persons and property.

109.    Upon information and belief, Lumber Liquidators knew that, at the time Wood Flooring left Lumber Liquidators' control, the Wood Flooring contain the defect described herein resulting in dangerous levels of formaldehyde emissions.  At the time of sale, the Wood Flooring contained the defects. The defects permit unsafe levels of formaldehyde gas emission and rendered the flooring unable to perform the ordinary purposes for which it was used as well as cause the resulting damage described herein.

110.    As a direct and proximate cause of the violation of the Wisconsin Deceptive Practices Act, described above, Plaintiffs the Fugates and members of the Wisconsin Sub-Class have been injured in that they have purchased homes or other structures, or outfitted their homes or other structures, with the unsafe and dangerous Wood Flooring based on nondisclosure of material facts alleged above.  Had Plaintiffs and Class Members known the defective nature of the Wood Flooring used on their structures, they would not have purchased their structures, would not have outfitted their structures, or would have paid a lower price for their structures.

111.    Lumber Liquidators used unfair methods of competition and unfair or deceptive acts or practices in conducting their businesses.  This conduct constitutes fraud within meaning of the Wisconsin Deceptive Trade Practices Act.  This unlawful conduct is continuing, with no indication that Lumber Liquidators will cease.

112.    As a direct and proximate result of Lumber Liquidators' unfair and deceptive acts and practices, Plaintiffs the Fugates and the other members of the Wisconsin Sub-Class will suffer damages, which include, without limitation, costs to inspect, repair or replace their flooring and other property, in an amount to be determined at trial.

113.    As a direct and proximate result of Lumber Liquidators' unfair and deceptive acts and practices, Plaintiffs the Fugates and the other Wisconsin Sub-Class members suffered and will continue to suffer damages, which include, without limitation, to their health and wellbeing in an amount to be determined at trial.

114.    As a result of the acts of consumer fraud described above, Plaintiffs the Fugates and the Wisconsin Sub-Class have suffered ascertainable loss in the form of actual damages that include the purchase price of the products for which Lumber Liquidators is liable to the Plaintiffs the Fugates and the Wisconsin Sub-Class for at least twice their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

## COUNT V
### (Violation of Georgia Fair Business Practices Act)
### (On behalf of Plaintiff the Perkins and Wisconsin State Sub-Class)

115.    Plaintiffs the Perkins, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

116.    The conduct described above and throughout this Complaint took place within the State of Georgia and constitutes unfair business practices in violation of the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390, *et seq*.

117.    The GFBPA protects consumers "from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state." O.C.G.A. § 10-1-391(a). The GFBPA "forbids and declares unlawful any unfair or deceptive acts or practices in the conduct of

consumer transactions and consumer acts or practices in trade or commerce." *Henderson v. Gandy*, 608 S.E.2d 248, 252 (Ga. App. 2004).

118.    The GFBPA applies to the claims of Plaintiffs the Perkins and all Georgia Sub-Class members because the conduct which constitutes violations of the GFBPA by the Defendants occurred within or centered upon the State of Wisconsin.

119.    Lumber Liquidators engaged in the concealment, suppression, or omission in violation of the GFBPA when, in selling and advertising the Wood Flooring, Lumber Liquidators knew that there were defects in the Wood Flooring which would result in dangerous levels of formaldehyde gas emissions.

120.    Lumber Liquidators engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiffs the Perkins, Plaintiffs' builders/contractors, Class members, Class members' builders/contractors, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase Lumber Liquidators' Wood Flooring containing said defect.

121.    Plaintiffs the Perkins and Plaintiffs' builder/contractor, Class members, and/or Class members' builders/contractors would not have purchased the Wood Flooring had they known or become informed of the material defects in the Wood Flooring.

122.    Lumber Liquidators' concealment, suppression, or omission of material facts as alleged herein constitute unfair, deceptive and fraudulent business practices within the meaning of the GFBPA.

123.    Lumber Liquidators has acted unfairly and deceptively by misrepresenting the quality of the Wood Flooring.

124.    Lumber Liquidators either knew, or should have known, that the Wood Flooring was defectively designed and/or manufactured and would emit unsafe levels of formaldehyde, which would result in severe damages to the Plaintiffs' persons and property.

125.    Upon information and belief, Lumber Liquidators knew that, at the time Wood Flooring left Lumber Liquidators' control, the Wood Flooring contain the defect described herein resulting in dangerous levels of formaldehyde emissions.  At the time of sale, the Wood Flooring contained the defects. The defects permit unsafe levels of formaldehyde gas emission and rendered the flooring unable to perform the ordinary purposes for which it was used as well as cause the resulting damage described herein.

126.    As a direct and proximate cause of the violation of the GFBPA, described above, Plaintiffs the Perkins and members of the Georgia Sub-Class have been injured in that they have purchased homes or other structures, or outfitted their homes or other structures, with the unsafe and dangerous Wood Flooring based on nondisclosure of material facts alleged above.  Had Plaintiffs and Class Members known the defective nature of the Wood Flooring used on their structures, they would not have purchased their structures, would not have outfitted their structures, or would have paid a lower price for their structures.

127.    Lumber Liquidators used unfair methods of competition and unfair or deceptive acts or practices in conducting their businesses.  This conduct constitutes fraud within meaning of the GFBPA.  This unlawful conduct is continuing, with no indication that Lumber Liquidators will cease.

128.    As a direct and proximate result of Lumber Liquidators' unfair and deceptive acts and practices, Plaintiffs the Perkins and the other members of the Georgia Sub-Class will suffer damages, which include, without limitation, costs to inspect, repair or replace their flooring and other property, in an amount to be determined at trial.

129.    As a direct and proximate result of Lumber Liquidators' unfair and deceptive acts and practices, Plaintiffs the Perkins and the other Georgia Sub-Class members suffered and will continue to suffer damages, which include, without limitation, to their health and wellbeing in an amount to be determined at trial.

130.    As a result of the acts of consumer fraud described above, Plaintiffs the Perkins and the Georgia Sub-Class have suffered ascertainable loss in the form of actual damages that include the purchase price of the products for which Lumber Liquidators is liable to the Plaintiffs the Perkins and the Georgia Sub-Class for at least twice their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in this Complaint.

## COUNT VII
### (Fraudulent Misrepresentation)

131.    Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

132.    Lumber Liquidators falsely and fraudulently represented to Plaintiffs, the Class members, and/or the consuming public in general that Lumber Liquidators' products would be free from defects and fit for their customary and normal use.

133.    Lumber Liquidators falsely represented to purchasers, consumers, and others that the Wood Flooring was warranted against defects in material and workmanship when in fact the Limit Warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Wood Flooring.

134.   When said representations were made by Lumber Liquidators, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

135.   These representations were made by Lumber Liquidators with the intent of defrauding and deceiving the Plaintiffs, the Class members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of the Plaintiffs and the Class members.

136.   At the time the aforesaid representations were made by Lumber Liquidators, Plaintiffs and the Class members were unaware of the falsity of said representations and reasonably believed them to be true.

137.   In reliance upon said representations, the Plaintiffs' and Class members' properties were built or outfitted using Lumber Liquidators' Wood Flooring, which was installed and used on Plaintiffs' and the Class members' properties thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

138.   Lumber Liquidators knew and was aware, or should have been aware, that Lumber Liquidators' Wood Flooring was defective and not fit for their customary and normal use.

139.   Lumber Liquidators knew, or should have known, that Lumber Liquidators' Wood Flooring had a potential to, could, and would cause severe damage and injury to property owners.

140.   Lumber Liquidators brought its Wood Flooring to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs and the Class members.

141.    By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

<u>COUNT VIII</u>
**(Negligent Misrepresentation)**

142.    Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

143.    Lumber Liquidators made representations about the Wood Flooring to Plaintiffs, Class members, and their agents or predecessors, as set forth in this Complaint.

144.    Those representations were false and/or materially misleading.

145.    When Lumber Liquidators made the representations, it knew they were untrue or it had a reckless disregard for whether they were true, or it should have known they were untrue.

146.    Lumber Liquidators knew that Plaintiffs, Class members, and their agents or predecessors, were relying on the representations.

147.    In reliance upon the representations, Plaintiffs and Class Members purchased the Wood Flooring and installed on the Plaintiffs' and Class members' homes.

148.    As a direct and proximate result of Lumber Liquidators negligent misrepresentations, Plaintiffs and Class members have been damaged as set forth in this Complaint.

149.    As a direct and proximate result of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

<u>**COUNT IX**</u>
**(Fraudulent Omission/Concealment)**

150.    Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

151.    Lumber Liquidators knew or should have known that the Wood Flooring was defective in design, was not fit for its ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Lumber Liquidators nor the reasonable expectations of ordinary consumers.

152.    Lumber Liquidators fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Wood Flooring is defective.

153.    Lumber Liquidators had exclusive knowledge of the defective nature of the Wood Flooring at the time of sale.   The defect is latent and not something that Plaintiffs or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

154.    Lumber Liquidators had the capacity to, and did, deceive Plaintiffs and Class members into believing that they were purchasing flooring free from defects.

155.    Lumber Liquidators undertook active and ongoing steps to conceal the defect. Plaintiffs is aware of nothing in Lumber Liquidators' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Lumber Liquidators' awareness of the problem.

156.    The facts concealed and/or not disclosed by Lumber Liquidators to Plaintiffs and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the flooring.

157.   Lumber Liquidators intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiffs and the Class to act thereon.

158.   Plaintiffs and the Class justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidenced by their purchase of the Wood Flooring.

159.   Plaintiffs and Class members suffered a loss of money in an amount to be proven at trial as a result of Lumber Liquidators' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Wood Flooring on the same terms if the true facts concerning the defective flooring had been known; (b) they paid a price premium due to fact that the flooring would be free from defects; and (c) the flooring did not perform as promised.  Plaintiffs also would have initiated this suit earlier had the defect been disclosed to them.

160.   By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT X
### (Unjust Enrichment)

161.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

162.   Plaintiffs and Class members conferred a benefit on Defendants when they purchased the Wood Flooring.

163.   Lumber Liquidators has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Wood Flooring, the retention of which under these circumstances is unjust and inequitable because Lumber Liquidators' Wood Flooring is defective in design, was not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Lumber

Liquidators nor the reasonable expectations of ordinary consumers and caused the Plaintiffs and Class members to lose money as a result thereof.

164.    Plaintiffs and Class members suffered a loss of money as a result of Lumber Liquidators' unjust enrichment because: (a) they would not have purchased the Wood Flooring on the same terms if the true facts concerning the unsafe Wood Flooring had been known; (b) they paid a price premium due to the fact the Wood Flooring would be free from defects; and (c) the Wood Flooring did not perform as promised.

165.    Because Lumber Liquidators' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Lumber Liquidators must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

166.    Plaintiffs and the Class Members are entitled to restitution of, disgorgement of, and/or the imposition of the constructive trust upon, all profits, benefits, and other compensation obtained by the Defendants from their deceptive, misleading, and unlawful conduct.

## COUNT XI
### (Violation of the Magnuson-Moss Warranty Act)

167.    Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

168.    Plaintiffs and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

169.    Lumber Liquidators is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

170.    Lumber Liquidators flooring purchased separate from the initial construction of the structure constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

171.    Lumber Liquidators' express warranties and written affirmations of fact regarding the nature of the flooring, including that the flooring was free from defects and was in compliance with CARB and EU formaldehyde standards and all other applicable laws and regulations, constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

172.    Lumber Liquidators breached their warranties by, inter alia:

    a.    Manufacturing, selling and/or distributing flooring that exceeds the CARB formaldehyde standards;

    b.    Manufacturing, importing, selling and/or distributing flooring that fails to comply with all applicable laws and regulations; and

    c.    Refusing to honor the express warranty by not properly repair or replace the defective flooring.

173.    Lumber Liquidators' breach of its express warranties deprived Plaintiffs and the other Class members of the benefits of their bargains.

174.    As a direct and proximate result of Lumber Liquidators' breaches of its written warranties, Plaintiffs and the other Class members sustained damages in an amount to be determined at trial.  Lumber Liquidators' conduct damaged Plaintiffs and the other Class members, who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

### COUNT XII
### (Declaratory Relief 28 U.S.C. § 2201)

175.    Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

176.    Lumber Liquidators has acted or refused to act on grounds that apply generally to the Injunctive Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Injunctive Relief Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).  Plaintiffs seek a ruling that:

a.    the Wood Flooring has a defect in workmanship and material that allows for unsafe levels of formaldehyde emissions;

b.    The defect may not be detectable until after the warranty provided by Lumber Liquidators has expired;

c.    The defect is material and requires disclosure for all of this flooring;

d.    All persons who own structures containing Wood Flooring are to be provided the best practicable notice of the defect, which cost shall be borne by Lumber Liquidators;

e.    Certain provisions of Lumber Liquidators' warranty are void as unconscionable;

f.    Lumber Liquidators shall re-audit and reassess all prior warranty claims, including claims previously denied in whole or in part, where the denial was based on warranty or on other grounds, and pay the full cost of repairs and damages; and

g.    Lumber Liquidators will establish an inspection program and protocol, under Court supervision, to be communicated to Class members, which will require Lumber Liquidators to inspect, upon request, a Class member's structure to determine formaldehyde emissions levels are safe. Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to by the parties.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all other similarly situated, pray for a judgment against Defendants as follows:

1.    For an order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representative of the Classes, and appointing the law firm representing Plaintiffs as Class Counsel;

2.    For compensatory damages sustained by Plaintiffs and the Damages Class, and Pennsylvania and Wisconsin State Sub-Classes;

3.    For equitable and/or injunctive relief for the Injunctive Relief Class;

4.    For payment of costs of suit herein incurred;

5.      For both pre-judgment and post-judgment interest on any amounts awarded;

6.      For punitive damages;

7.      For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

8.      For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs on behalf of herself and on behalf of the Class Members, hereby demands a trial by jury as to all issues so triable.

**Dated:  March 13, 2015**                                  Respectfully submitted,

                                                            */s/ KJG2445*
                                                            Richard M. Golomb, Esquire
                                                            Ruben Honik, Esquire
                                                            Kenneth J. Grunfeld, Esquire
                                                            David J. Stanoch, Esquire
                                                            **GOLOMB & HONIK, P.C.**
                                                            1515 Market Street, Suite 1100
                                                            Philadelphia, PA 19102
                                                            Phone: (215) 985-9177
                                                            Fax:    (215) 985-4169
                                                            Email:  rgolomb@golombhonik.com
                                                                    rhonik@golombhonik.com
                                                                    kgrunfeld@golombhonik.com
                                                                    dstanoch@golombhonik.com

                                                            *Attorneys for Plaintiffs and the Class*